UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

IN RE

NORTH BROOKLYN REAL ESTATE
INITIATIVE, CORP.,

DEBTOR.

CHAPTER 11

CASE NO. 1-18-43325-ess

JUDGE: Elizabeth S. Stong

MOTION DATE:  October 23, 2018

MOTION TIME: 10:30 a.m.

**PLEASE TAKE NOTICE** that upon the annexed affirmation of Shari S. Barak, a member of the law firm of Shapiro, DiCaro & Barak, LLC, attorneys for Selene Finance LP as servicer for MTGLQ Investors, L.P. ("Movant") will move this Court as set forth below:

JUDGE:                          HON.  Elizabeth S. Stong

RETURN DATE & TIME:      October 23, 2018 at 10:30 a.m.

COURTHOUSE:                United States Bankruptcy Court
                                    Courtroom 3585
                                    271 Cadman Plaza East
                                    Brooklyn, NY 11201

RELIEF REQUESTED:        The proposed order will seek to vacate the automatic stay imposed by 11 U.S.C. § 362(a) generally described as 56 Martense Street, Brooklyn, NY 11226, pursuant to 11 U.S.C. § 362(d)(1) based upon the total debt due to Movant, resulting in Movant's lack of adequate protection with regard to the subject property.

14-035220

**PLEASE TAKE FURTHER NOTICE,** that answering affidavits, if any, to the relief requested, must be served upon and received by Shapiro, DiCaro & Barak, LLC at their offices at One Huntington Quadrangle, Suite 3N05, Melville, NY 11747 and filed with the Clerk of the United States Bankruptcy Court for the Eastern District of New York at United States Bankruptcy Court, 271 Cadman Plaza East, Court Room #3585, Brooklyn, NY 11201 no later than seven (7) days prior to the return date of this motion.

Dated:    September 5, 2018
          Melville, New York

                              _/s/Shari Barak
                              _____

                              Shari S. Barak
                              Managing Attorney
                              Shapiro, DiCaro & Barak, LLC
                              Attorneys for Selene Finance LP as servicer for
                              MTGLQ Investors, L.P.
                              One Huntington Quadrangle, Suite 3N05
                              Melville, NY 11747
                              Telephone: (631) 844-9611
                              Fax: (631) 844-9525

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS NOTICE IS REQUIRED BY THE PROVISIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND DOES NOT IMPLY THAT WE ARE ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES.**

TO:    SERVICE LIST

14-035220

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION
IN RE

NORTH BROOKLYN REAL ESTATE
INITIATIVE, CORP.,

                    DEBTOR.

CHAPTER 11

CASE NO. 1-18-43325-ess

JUDGE: Elizabeth S. Stong

## ORDER GRANTING RELIEF FROM
## THE AUTOMATIC STAY

**UPON** consideration of the Application of Selene Finance LP as servicer for MTGLQ Investors, L.P., ("Movant") dated September 5, 2018, and it appearing that neither the Debtor nor the U.S. Trustee have opposition to the motion brought by Movant, for relief from the automatic stay, and with good cause appearing therefore, it is

**ORDERED** that the automatic stay, heretofore in effect pursuant to 11 U.S.C. § 362(a), is hereby vacated for cause pursuant to 11 U.S.C. § 362(d)(1) as to Movant, its agents, assigns or successors in interest, so that Movant, its agents, assigns or successors in interest, may take any and all actions pursuant to the Note and Mortgage and applicable state law including but not limited to foreclose its mortgage on premises known as 56 Martense Street, Brooklyn, NY 11226 without further application to this Court, and it is further

**ORDERED** that in the event this case is converted to a case under any other chapter of the U.S. Bankruptcy Code, this Order will remain in full force and effect; and it is further

14-035220

**ORDERED** that the Movant shall promptly report and turn over to the United States Trustee any surplus monies realized by any sale of the Property.

14-035220

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION
IN RE

NORTH BROOKLYN REAL ESTATE
INITIATIVE, CORP.,

                    DEBTOR

CHAPTER 11

CASE NO. 1-18-43325-ess

JUDGE: Elizabeth S. Stong

MOTION DATE:  October 23, 2018

MOTION TIME: 10:30 a.m.

## AFFIRMATION IN SUPPORT OF ENTRY OF AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

Shari S. Barak, an attorney at law duly admitted to practice before the Courts of the State of New York and the U.S. District Court for the Eastern District of New York, hereby affirms the following to be true under penalty of perjury:

1.  I am a member with the law firm of Shapiro, DiCaro & Barak, LLC, attorneys for Selene Finance LP as servicer for MTGLQ Investors, L.P. ("Movant"), a secured creditor of North Brooklyn Real Estate Initiative, Corp ("Debtor").  As such, I am fully familiar with the facts and circumstances of this case.

2.  I make this Affirmation in support of the within request for an Order Granting Relief from the automatic stay, for cause, pursuant to 11 U.S.C. § 362(d)(1) based upon Debtor's post-petition default, resulting in Movant's lack of adequate protection.

3.  Jurisdiction is conferred on this Court by the provisions of 28 U.S.C. § 1334.  This is a proceeding to terminate and annul the automatic stay and is therefore a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2).

14-035220

4.    Movant is a secured creditor of the Borrower pursuant to an Adjustable Rate Note executed by Shenicole Tanner (the "Borrower") on July 25, 2006, whereby Shenicole Tanner promised to repay the principal amount of $570,000.00 plus interest to First Magnus Financial Corporation, An Arizona Corporation (the "Note").   To secure the repayment of the Note, Shenicole Tanner granted Mortgage Electronic Registration Systems, Inc., as nominee for First Magnus Financial Corporation a mortgage, which was duly recorded in the Kings County Office of the City Register on August 15, 2006 in CRFN 2006000459499 (the "Mortgage," Note and Mortgage, collectively, as the "Loan"), encumbering real property located at 56 Martense Street, Brooklyn, NY 11226 (the "Property").   The Loan was assigned to Aurora Loan Services, LLC, and said transfer was memorialized by an Assignment of Mortgage executed on April 15, 2009 and recorded May 15, 2009 in CRFN 2009000146110 (the "First Assignment of Mortgage"). The Loan was then transferred to Nationstar Mortgage LLC and said transfer was memorialized by an Assignment of Mortgage executed on June 22, 2012 and recorded November 20, 2012 in CRFN 2012000456423 (the "Second Assignment of Mortgage").   The Loan was subsequently transferred to MTGLQ Investors, L.P. and said transfer was memorialized by an Assignment of Mortgage executed on January 19, 2017 and recorded February 22, 2017 in CRFN 2017000073457 (the "Third Assignment of Mortgage").   Copies of the Note, Mortgage, and Assignments of Mortgage are annexed hereto as **Exhibit "A."**

5.    Upon information and belief, the Borrower herein owns the Property.

6.    Debtor filed a petition for relief under Chapter 11 of the U.S. Bankruptcy Code on or about June 6, 2018. Debtor lists the premises in his Petition as property of the estate, however the debtor is not an obligor on the Note as described in paragraph 4 hereinabove nor is the debtor on the mortgage, or a named plaintiff in the foreclosure action commenced in Kings County under

14-035220

index no, 511854/2014. Apparently on or about June 4, 2018 a deed was recorded to the debtor herein transferring the premises for no consideration. A copy of said deed is annexed hereto as **Exhibit "B"**. Said transfer was made without the consent of the movant and in direct contravention to the terms of the mortgage.

7.   The Mortgage was in default on the day the Debtor filed this bankruptcy. Based upon said default, Movant initiated foreclosure proceedings in the Supreme Court of the State of New York, County of Kings, under index number 511854/2014. Judgment of Foreclosure & Sale ("JFS") was entered August 17, 2017. Foreclosure sale was duly advertised in accordance with said judgement, with a sale date scheduled for June 7, 2018. The filing of the instant bankruptcy stayed said action. A copy of the JFS and Notice of Sale is annexed hereto as **Exhibit "C."**

8.   Shenicole Tanner, the Borrower, has failed to make current mortgage payments due to Movant under the terms of the Loan. As a result, the Mortgage remains due for the July 1, 2008 payment and each subsequent payment thereafter including, post-petition obligations.

9.   The amount of delinquency due as of August 15, 2018 under the Mortgage is as follows:

| | |
|---|---|
| 38 Defaulted Monthly Payments at $5,568.56 each (July 2008 through August 2011) | $211,605.28 |
| 6 Defaulted Monthly Payments at $3,802.38 each (September 2011 through February 2012) | $22,814.28 |
| 6 Defaulted Monthly Payments at $3,908.75 each (March 2012 through August 2012) | $23,452.50 |
| 6 Defaulted Monthly Payments at $3,908.75 each (September 2012 through February 2013) | $23,452.50 |
| 6 Defaulted Monthly Payments at $3,840.00 each (March 2013 through August 2013) | $23,040.00 |
| 24 Defaulted Monthly Payments at $3,806.63 each (September 2013 through August 2015) | $91,359.12 |
| 6 Defaulted Monthly Payments at $3,837.46 each (September 2015 through February 2016) | $23,024.76 |
| 12 Defaulted Monthly Payments at $3,929.23 each (March 2016 through February 2017) | $47,150.76 |

14-035220

| | |
|---|---:|
| 18 Defaulted Monthly Payments at $4,049.03 each (March 2017 through August 2018) | $72,882.54 |
| Late Charges | $720.49 |
| Escrow Advance | $9,355.08 |
| Foreclosure Atty Fees | $4,685.00 |
| Property Inspections | $1,387.50 |
| Referee Fee | $250.00 |
| Publication Costs | $7,207.90 |
| Tax Search | $54.00 |
| Code Violation Fee | $80.00 |
| Court Costs | $500.00 |
| Title Costs | $706.00 |
| Recording Costs | $82.00 |
| Posting Costs | $1,373.40 |
| Escrow to Corporate | $24,583.20 |
| Total Delinquencies | $589,719.31 |

10. A copy of the Relief from Stay-Real Estate and Cooperative Apartments ("Affidavit") is annexed hereto as **Exhibit "D."**

11. Moreover, in view of the total debt due to Movant and in light of the Borrower's failure to make payments, Movant is no longer adequately protected. The automatic stay must be vacated for cause pursuant to 11 U.S.C. § 362(d)(1).

12. As set forth in the Affidavit, as of August 15, 2018, the approximate debt due and owing to Movant equals $1,006,023.59. The debt is accruing interest at a rate of 8.500% per annum.

13. Based upon the Debtor's Schedule D, the Property has an estimated fair value of approximately $1,300,000.00. A copy of Debtor's Schedule D is annexed hereto as **Exhibit "E."** As indicated in paragraph 11 herein above, the total debt to Movant equals $1,006,023.59.

14. The Borrower, Debtor, Debtor's Attorney, and the Office of the United States Trustee and all creditors that have filed a notice of appearance have each been duly served with the

within Notice of Motion, Affirmation, Exhibits and proposed Order Vacating Stay, as more fully set forth in the annexed affidavit of mailing.

15. No prior application has been made for the relief requested herein.

**WHEREFORE,** Movant respectfully requests an Order of this Court vacating the automatic stay for cause pursuant to 11 U.S.C. § 362(d)(1) as to the aforementioned Property; allowing Movant, its agents, assigns or successors in interest, leave to exercise its rights pursuant to the Note and Mortgage including but not limited to foreclose the Mortgage secured by the subject Property; and for such other, further and different relief as to this Court may seem just, proper and equitable.

Dated:      September 5, 2018
            Melville, New York


                                        _/s/Shari Barak

                                        Shari S. Barak
                                        Managing Attorney
                                        Shapiro, DiCaro & Barak, LLC
                                        Attorneys for Selene Finance LP as servicer for
                                        MTGLQ Investors, L.P.
                                        One Huntington Quadrangle, Suite 3N05
                                        Melville, NY  11747
                                        Telephone: (631) 844-9611
                                        Fax: (631) 844-9525

14-035220

EXHIBIT "A"

(Page 1 of 7)

SEE "ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HEREOF.

MIN
MERS Phone:

# ADJUSTABLE RATE NOTE

LOAN NO:

(LIBOR Six-Month Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| JULY 25, 2006 | BROOKLYN | NEW YORK |
|---|---|---|
| [Date] | [City] | [State] |

56 MARTENSE ST, BROOKLYN, NY 11226
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 570,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.500 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the first day of each month beginning on SEPTEMBER, 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on AUGUST 01, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at First Magnus Financial Corporation, An Arizona Corporation
803 North Wilmot Road, Tucson, AZ 85711
or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 4,382.81 . This amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -
Single Family - Fannie Mae UNIFORM INSTRUMENT

Initials: _____

Form 3520 1/01

VMP-838N (0210)

Page 1 of 4

LENDER SUPPORT SYSTEMS INC. 838NMX.NEW (02/03)

ORIGINAL

(Page 2 of 7)

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of          AUGUST, 2011          , and on that day every 6th     month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding     TWO AND THREE QUARTERS          percentage points (          2.750          %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than          14.500          % or less than     8.500          %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than          TWO AND 000/1000THS          percentage point(s) (          2.000          %) from the rate of interest I have been paying for the preceding          6          months. My interest rate will never be greater than     14.500          % , or less than 8.500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make aP repayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of any monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

VMP-838N (0210)                               Page 2 of 4                               Initials:                 Form 3520 1/01

ORIGINAL

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **2.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

VMP-838N (0210)                Page 3 of 4                Initials: _A.T._
                                                          Form 3520 1/01

ORIGINAL

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ 7/25/06 (Seal)          _____ (Seal)
SHENICOLE TANNER          -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                        -Borrower

*[Sign Original Only]*

VMP-838N (0210)                    Page 4 of 4                    Form 3520 1/01



WITHOUT RECOURSE
PAY TO THE ORDER OF
FIRST MAGNUS FINANCIAL CORPORATION
an Arizona Corporation
BY:

## ADDENDUM TO NOTE

MIN: ███████
MERS P-████

LOAN NO.: ███████

This addendum is made          JULY 25, 2006          and is incorporated into and deemed to amend and supplement the Adjustable Rate Note of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
66 MARTENSE ST, BROOKLYN, NY 11226

### AMENDED PROVISIONS

In addition to the provisions and agreements made in the Note, I/we further covenant and agree as follows:

### ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than          14.500          % or less than          6.500          %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than   TWO AND 000/1000THS   percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than          14.500          %. My interest rate will never be less than          6.500          %.

### UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, aMo rtgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

In Witness Thereof, Trustor has executed this addendum.

Witness

_SHENICOLE TANNER_          7/25/06
SHENICOLE TANNER          (Date)          _____ (Date)

_____ (Date)          _____ (Date)

1201 LIBOR Addendum to Note (01/01)          LENDER SUPPORT SYSTEMS, INC. AURA1201.AUR (08/04)

ORIGINAL

## ADDENDUM TO NOTE

MIN: ▓▓▓▓▓▓
MERS Phone: ▓▓▓▓▓▓

LOAN NO.: ▓▓▓▓▓▓

This addendum is made        JULY 28, 2008        and is incorporated into and deemed to amend and supplement the Adjustable Rate Note of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
58 MARTENSE ST, BROOKLYN, NY 11226

### AMENDED PROVISIONS

In addition to the provisions and agreements made in the Note, I/we further covenant and agree as follows:

### ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than        14.500        % or less than        8.500        %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than    TWO    000/1000THS    percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding six (6) months.   My interest rate will never be greater than        14.500        %.   My interest rate will never be less than        8.500        %.

### UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, aMo rtgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

In Witness Thereof, Trustor has executed this addendum.

Witness _____

_Sheni Cole_ _____ 7/25/06
SHENICOLE TANNER                        (Date)                                              (Date)

_____ (Date)                                              (Date)

1201 LIBOR Addendum to Note (01/01)                    LENDER SUPPORT SYSTEMS, INC. AURA1201.AUR (08/04)

ORIGINAL

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on *this* page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 28 |
|---|---|---|

**Document ID:** 2006080700439003    Document Date: 07-25-2006    Preparation Date: 08-08-2006
**Document Type:** MORTGAGE
**Document Page Count:** 27

**PRESENTER:**
NEW WORLD ABSTRACT (NW06- 8115K)
AS AGENTS OF TICOR TITLE INSURANCE
COMPANY
175-61 HILLSIDE AVENUE
JAMAICA, NY 11432
718-739-4545

**RETURN TO:**
FIRST MAGNUS FINANCILA CORPORATION
603 N. WILMOT
TUCSON, AZ 85711

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 5089 | 28 | Entire Lot | | 56 MARTENSE STREET |

**Property Type:** DWELLING ONLY - 3 FAMILY

### CROSS REFERENCE DATA

CRFN_____ *or* Document ID_____ *or* _____ Year____ Reel ___ Page ____ *or* File Number_____

### PARTIES

**MORTGAGER/BORROWER:**
SHENICOLE TANNER
56 MARTENSE STREET
BROOKLYN, NY 11226

**MORTGAGEE/LENDER:**
MERS
PO BOX 2026
FLINT, MI 48501

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 172.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 570,000.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 570,000.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 2,850.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 6,412.50 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 1,425.00 | | |
| MTA: | $ | 1,710.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 12,397.50 | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed        08-15-2006 11:34
City Register File No.(CRFN):
            2006000459499

*Annette M Hill*

***City Register Official Signature***

Return To:
FIRST MAGNUS FINANCIAL CORPORATION

603 N. WILMOT
TUCSON, AZ 85711

Prepared By:

FIRST MAGNUS FINANCIAL CORPORATION
603 N. WILMOT
TUCSON, AZ 85711

—————————— [Space Above This Line For Recording Data] ——————————

LOAN NO.: ▮

MIN: ▮
MERS Phone: ▮

# MORTGAGE

WORDS USED OFTEN IN THIS DOCUMENT
(A) "Security Instrument." This document, which is dated       JULY 25, 2005
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower."

SHENICOLE TANNER

whose address is
55 MARTENSE ST, BROOKLYN, NY 11226
sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE,
MERS IS THE MORTGAGEE OF RECORD.
(D) "Lender."
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

will be called "Lender." Lender is a corporation or association which exists under the laws of
ARIZONA                                    . Lender's address is
603 North Wilmot Road, Tucson, AZ 85711

Section:        Block:        Lot:        Unit:

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Initials: ___        Form 3033 1/01
V-6A(NY) (0508)                        Page 1 of 17        LENDER SUPPORT SYSTEMS INC. MERS6ANY NEW (12/05)

(E) "Note." The note signed by Borrower and dated          JULY 25, 2006          , will be called
the "Note." The Note shows that I owe Lender

FIVE HUNDRED SEVENTY THOUSAND AND NO/100 X X X X X X X X X X X X X X X X X X X X X
                              Dollars (U.S. $   570,000.00 )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments
and to pay the debt in full by          AUGUST 01, 2036

(F) "Property." The property that is described below in the section titled "Description of the Property,"
will be called the "Property."

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and
late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of
Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called
"Riders." The following Riders are to be signed by Borrower [check box as applicable]:

[XX] Adjustable Rate Rider        [ ] Condominium Rider            [XX] 1-4 Family Rider
[ ] Graduated Payment Rider       [ ] Planned Unit Development Rider [ ] Biweekly Payment Rider
[ ] Balloon Rider                 [ ] Rate Improvement Rider       [ ] Second Home Rider
[XX] Other(s) [specify] ADDENDUM TO ADJUSTABLE RATE RIDER


(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than
by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers
(where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM)
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of
damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under
the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid
Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the
Property. A taking of the Property by any governmental authority by eminent domain is known as
"Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the
nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note,
and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same subject
matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are
imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally
related mortgage loan" under RESPA.

V-6A(NY) (0508)                    Page 2 of 17                          Initials _____
                                                                          Form 3033 1/01

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if Ifail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at

56 MARTENSE ST                                                        [Street]
BROOKLYN                    [City, Town or Village], New York    11226    [Zip Code].
This Property is in                   KINGS                         County. It has the following legal
description:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE PART HEREOF. ..... AND BEING MORE PARTICULARLY DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

*Apartment Building*

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that Ih ave in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

Initials: _____

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that Iacqu ire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) Ilawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that Iwill be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that Ih ave. Ip romise that Iwill defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. Borrower's Promise to Pay. I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. Iwill also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which Im ight have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. Application of Borrower's Payments and Insurance Proceeds. Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order.

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

V-6A(NY) (0508)    Page 4 of 17    Initials: _____    Form 3033 1/01

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. Monthly Payments For Taxes And Insurance.

(a) Borrower's Obligations.

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5o f this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I d o not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

Initials: _____

Form 3033 1/01

I promise to promptly send to Lender any notices that I rec elve of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items In the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services If Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such acharg e. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4.  Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, Iwill do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only su long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in alawsu it so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

Initials *E.T*

Form 3033 1/01

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Iacknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Icou ld have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and Ih ave agreed in writing not to use the Insurance Proceeds for that purpose. During the period

Initials: _____

Form 3033 1/01

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after Isig n this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that Id o not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7.  **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) Maintenance and Protection of the Property.

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair su that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5o f this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation uf, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) Lender's Inspection of Property.

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

Initials *J. T.*

Form 3033 1/01

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

Initials: _____

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If Iaban don the Property, or if, after Lender sends me notice that the Opposing Party (as defioed in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a cou rt ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If Icorrect the default, Iwill have the right to have enforcement of this Security Instrument discontinued, as provided In Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest io the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for In Section 2.

12. Continuation of Borrower's Obligations And of Lender's Rights.

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them In the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments In amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment In Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations. If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

Initials

V-6A(NY) (0508)                         Page 11 of 17                         Form 3033 1/01

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. Loan Charges. Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. Notices Required under this Security Instrument. All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of ad ifferent address. I will promptly notify Lender of my change of address. If Lender specifies ap rocedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Law That Governs this Security Instrument; Word Usage. This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. I will be given one copy of the Note and of this Security Instrument.

18. Agreements about Lender's Rights If the Property Is Sold or Transferred. Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I d o not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, Im ay have the right to have eoforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, Iwill  meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that Ip ay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by afederal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

Initials _____

Form 3033 1/01

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and Iwill not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the Improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

Iwill promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Ilearn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

Initials: _____

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____
                        -Witness

_____
                        -Witness

_____ 7/25/06 ____(Seal)
SHENICOLE TANNER        -Borrower

_____(Seal)
                 -Borrower

_____(Seal)
                 -Borrower

_____(Seal)
                 -Borrower

_____(Seal)
                 -Borrower

_____(Seal)
                 -Borrower

_____(Seal)
                 -Borrower

_____(Seal)
                 -Borrower

STATE OF NEW YORK , Kings County ss:

On the 25 day of July 2006 before me, the undersigned, a notary public in and for said state, personally appeared SHENICOLE TANNER

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

My Commission Expires:

Notary Public

Tax Map Information:

SABRINA GRAHAM
Notary Public, State of New York
No. 01GR6086586
Qualified in Queens County
My Commission Expires June 14, 2007

V-6A(NY) (0508)          Page 17 of 17

Initials: _____

Form 3033 1/01



**Schedule A Description**

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York bounded and described as follows;

BEGINNING at a point on the Southerly side of Martense Street, distant 450.31 feet Easterly from the corner from the corner formed by the intersection of the Easterly side of Flatbush Avenue with the southerly side of Martense Street;

RUNNING THENCE Southerly at right angles to Martense Street and part of the distance through a party wall, 113 feet 4 ¾ inches to the center line of the block between Martense Street and church Avenue;

THENCE Easterly along said center line of the block, 25 feet;

THENCE Northerly at right angles to Martense and part of the distance through a party wall 113 feet 7 inches to the southerly side of Martense Street;

THENCE Easterly along the Southerly side of Martense Street 25 feet to the point or place of BEGINNING.

SAID PREMISES KNOWN AS 56 Martense Street, Brooklyn, New York

*Ticor*

*Apartment Building*

# ADJUSTABLE RATE RIDER

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)
SEE "ADDENDUM TO ARM RIDER" ATTACHED HERETO AND MADE A PART HEREOF.

LOAN NO.: ████████

MIN: ████
MERS Phone: ████████

THIS ADJUSTABLE RATE RIDER is made this    25th    day of    JULY, 2006
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

("Lender") of the same date and covering the property described in the Security Instrument and located at:

56 MARTENSE ST, BROOKLYN, NY 11226
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of    8.500    %. The Note provides for changes in the interest rate and the monthly payments, as follows:
4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of    AUGUST, 2011    , and on that day every    6th    month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

Initials: ____

Form 3138 1/01

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL) -Sing le Family - Fannie Mae Uniform Instrument
VMP-838R (0402)                         Page 1 of 4                 LENDER SUPPORT SYSTEMS INC  838R.NEW (07/04)

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND THREE QUARTERS** percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 14.500 % or less than 8.500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO AND 000/1000THS** percentage points ( 2.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 14.500 % , or less than 8.500 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

VMP-838R (0402)                Page 2 of 4

Initials: _X. T._

Form 3138 1/01

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a *reasonable* fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

VMP-838R (0402)                    Page 3 of 4                    Initials: ___

                                                                  Form 3138 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ 7/25/06 (Seal)
SHENICOLE TANNER              -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

VMP-838R (0402)          Page 4 of 4          Form 3138 1/01

# 1-4 FAMILY RIDER
### (Assignment of Rents)

LOAN NO.: ███████████████

MIN: ██████
MERS Phone: ████████

THIS 1-4 FAMILY RIDER is made this 25th day of JULY, 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

56 MARTENSE ST, BROOKLYN, NY 11226
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

Initials: _J. T._

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01
V-57R (0411).01    Page 1 of 3    LENDER SUPPORT SYSTEMS INC. 57R.NEW (06/06)

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Section 19 is deleted.

F. BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G. ASSIGNMENT OF LEASES. Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when ad efault occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Initials: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)
SHENICOLE TANNER                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

V-57R (0411).01                    Page 3 of 3                    Form 3170 1/01

# ADDENDUM TO ADJUSTABLE RATE RIDER

MIN: █████████
MERS Phone: █████████                                      LOAN NO.: █████████

This addendum is made    JULY 25, 2006    and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
56 MARTENSE ST, BROOKLYN, NY 11226

## AMENDED PROVISIONS

In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 14.500 % or less than 8.500 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000THS percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than 14.500 %. My interest rate will never be less than 8.500 %.

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

Initials: _____

1202 LIBOR Addendum to Rider                Page 1 of 2        LENDER SUPPORT SYSTEMS, INC. AURA1202.AUR (07/05)

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

In Witness Thereof, Trustor has executed this addendum.

Witness

_____

_Shenicole Tanner_ _7/25/06_ _____(Seal)                    _____(Seal)
SHENICOLE TANNER                    -Borrower                                                    -Borrower

_____(Seal)                    _____(Seal)
                                                    -Borrower                                                    -Borrower

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 3 |
|---|---|---|
| **Document ID:** 2009050600399001 | Document Date: 04-15-2009 | Preparation Date: 05-06-2009 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 1 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| HOLD FOR PICK-UP SUZANNE MANGO | HOLD FOR SUZANNE MANGO PICK UP |
| PRIME TITLE PT 58538 | PILLAR PROCESSING LLC |
| 410 NEW YORK AVENUE | 220 NORTHPOINTE PARKWAY, SUITE G |
| HUNTINGTON, NY 11743 | AMHERST, NY 14228 |
| 631-870-1100 | 716-204-2400 |
| thicks@primetitlellc.com | |

**PROPERTY DATA**

| Borough | Block Lot | Unit | Address |
|---|---|---|---|
| BROOKLYN | 5089 28 | Entire Lot | 56 MARTENSE STREET |

Property Type: DWELLING ONLY - 1 FAMILY

**CROSS REFERENCE DATA**

CRFN: 2006000459499

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. | AURORA LOAN SERVICES, LLC |
| 3300 SW 34TH AVENUE, SUITE 101 | 2617 COLLEGE PARK, PO BOX 1706 |
| OCALA, FL 34474 | SCOTTSBLUFF, NE 69361 |
| x Additional Parties Listed on Continuation Page | |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | RECORDED OR FILED IN THE OFFICE | | |
| MTA: | $ | 0.00 | OF THE CITY REGISTER OF THE | | |
| NYCTA: | $ | 0.00 | CITY OF NEW YORK | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed 05-15-2009 14:32 | | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | 42.00 | 2009000146110 | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annette M. Hill*

*City Register Official Signature*



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 3 |

Document ID: 2009050600399001     Document Date: 04-15-2009     Preparation Date: 05-06-2009
Document Type: ASSIGNMENT, MORTGAGE

**PARTIES**
**ASSIGNOR/OLD LENDER:**
FIRST MAGNUS FINANCIAL CORPORATION
3300 SW 34TH AVENUE, SUITE 101
OCALA, FL 34474

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

Rhonda Gall
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706

*fc*

## CORPORATE ASSIGNMENT OF MORTGAGE

Kings, New York
SELLER'S SERVICING # ▓▓▓▓▓
OLD SERVICING #: ▓▓▓▓▓

MERS #: ▓▓▓▓▓    VRU #: ▓▓▓▓▓

Date of Assignment: April 15th, 2009
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST MAGNUS
FINANCIAL CORPORATION, AN ARIZONA CORPORATION IT'S SUCCESSORS AND ASSIGNS at 3300 S.W.
34TH AVENUE, SUITE 101, OCALA, FL 34474
Assignee: AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, SCOTTSBLUFF, NE 69361

Executed By: SHENICOLE TANNER To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION
Date of Mortgage: 07/25/2006 Recorded: 08/15/2006 as Instrument No.: 2006000459499 In Kings, New York

Section/Block/Lot -5089-28

Property Address: 56 MARTENSE ST, BROOKLYN, NY 11226

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and
other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is
hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage
together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of
$570,000.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due
or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein
contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial
interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever,
subject to the terms contained in said Mortgage and Note. IN WITNESS WHEREOF, the assignor has executed
these presents the day and year first above written:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST MAGNUS FINANCIAL
CORPORATION, AN ARIZONA CORPORATION IT'S SUCCESSORS AND ASSIGNS
On April 15th, 2009

By: *Regina Garcia*
REGINA GARCIA, Vice-President



STATE OF Nebraska
COUNTY OF Scotts Bluff

On the 15th day of April in the year 2009 before me, the undersigned, personally appeared REGINA GARCIA,
Vice-President, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s)
whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the Instrument, the individual(s), or the
person upon behalf of which the individual(s) acted, executed the instrument, and that such individual(s) made such
appearance before the undersigned in the County of Scotts Bluff, State of Nebraska.

WITNESS my hand and official seal,

*Joann Rein*
JOANN REIN
Notary Expires: 12/27/2012
Scotts Bluff, Nebraska

GENERAL NOTARY - State of Nebraska
JOANN REIN
My Comm. Exp. Dec. 27, 2012

SEAL

(This area for notarial seal)

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 2 |
|---|---|---|
| **Document ID:** 2012111500543001 | **Document Date:** 06-22-2012 | **Preparation Date:** 11-15-2012 |
| **Document Type:** ASSIGNMENT, MORTGAGE | | |
| **Document Page Count:** 1 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| SEARCHNY, INC | SEARCHNY, INC |
| 111 JOHN ST 6TH FLOOR | 111 JOHN ST 6TH FLOOR |
| ****HOLD FOR PICKUP****************** | ****HOLD FOR PICKUP**D&V LEGAL- TANNER |
| NEW YORK, NY 10038 | NEW YORK, NY 10038 |
| 212-608-2546 | 212-608-2546 |
| bbond@searchnyinc.com | bbond@searchnyinc.com |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 5089 | 28 | Entire Lot | | 56 MARTENSE STREET |
| **Property Type:** DWELLING ONLY - 3 FAMILY | | | | | |

**CROSS REFERENCE DATA**

CRFN: 2006000459499

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| AURORA LOAN SERVICES LLC | NATIONSTAR MORTGAGE LLC |
| 2617 COLLEGE PARK | 350 HIGHLAND DRIVE |
| SCOTTSBLUFF, NE 69361 | LEWISVILLE, TX 95067 |

**FEES AND TAXES**

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Filing Fee: | |
| Taxable Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax: | |
| TAXES: County (Basic): | $ | 0.00 | | $ 0.00 |
| City (Additional): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional): | $ | 0.00 | | $ 0.00 |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| NYCTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| Additional MRT: | $ | 0.00 | **CITY OF NEW YORK** | |
| TOTAL: | $ | 0.00 | Recorded/Filed    11-20-2012 13:20 | |
| Recording Fee: | $ | 42.00 | City Register File No.(CRFN): | |
| Affidavit Fee: | $ | 0.00 | **2012000456423** | |

*Annette M Hill*

*City Register Official Signature*

Recording Requested By:

When Recorded Return To:

## CORPORATE ASSIGNMENT OF MORTGAGE

Kings, New York
REF #:
INVESTOR'S LOAN #:

Date of Assignment: June 22nd, 2012
Assignor: AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, SCOTTSBLUFF, NE 69381
Assignee: NATIONSTAR MORTGAGE, LLC at 350 HIGHLAND DRIVE, LEWISVILLE, TX 95067

Executed By: SHENICOLE TANNER  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION
Date of Mortgage: 07/25/2006 Recorded: 08/15/2006 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.:
2006000459499 in the County of Kings, State of New York. In the amount of $570,000.00.

-Assigned Wholly by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST
MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION TO AURORA LOAN SERVICES LLC Dated:
04/15/2009 Recorded: 05/15/2009 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2009000146110

Section/Block/Lot -5089-28

Property Address: 56 MARTENSE ST, BROOKLYN, NY 11226

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

For value received, the said Assignor hereby assigns and transfers to Assignee all its right, title and interest in
and to said Mortgage.

AURORA LOAN SERVICES LLC
On June 22nd, 2012          Effective Date: 07/01/2012

By: _____
CASSANDRA LEET, Vice-President

STATE OF Nebraska
COUNTY OF Scotts Bluff

On the 22nd day of June in the year 2012 before me, the undersigned, personally appeared CASSANDRA LEET,
Vice-President, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s)
whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the
person upon behalf of which the individual(s) acted, executed the instrument, and that such individuals(s) made such
appearance before the undersigned in the County of Scotts Bluff, State of Nebraska.

WITNESS my hand and official seal,

_____
LYNDA R. SCOTT
Notary Expires: 04/24/2014
Scotts Bluff, Nebraska

SEAL

GENERAL NOTARY - State of Nebraska
LYNDA K SCOTT
My Comm. Exp. April 24, 2014

(This area for notarial seal)



## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

### RECORDING AND ENDORSEMENT COVER PAGE          PAGE 1 OF 5

| | |
|---|---|
| Document ID: **2017022200360001** | Document Date: 01-19-2017 |
| Document Type: **ASSIGNMENT, MORTGAGE** | Preparation Date: 02-22-2017 |
| Document Page Count: **4** | |

**PRESENTER:**
MERIDIAN ASSET SERVICES
780 94TH AVENUE NORTH
SUITE 102
SAINT PETERSBURG, FL 33702
SUPPORT@SIMPLIFILE.COM

**RETURN TO:**
MERIDIAN ASSET SERVICES, INC.
780 94TH AVE N SUITE 102
ST. PETE, FL 33702
SUPPORT@SIMPLIFILE.COM

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5089 | 28 | Entire Lot | 56 MARTENSE STREET |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

**CRFN:** 2006000459499

### PARTIES

**ASSIGNOR/OLD LENDER:**
NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

**ASSIGNEE/NEW LENDER:**
MTGLQ INVESTORS, LP
6011 CONNECTION DRIVE, 5TH FLOOR
IRVING, TX 75039

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 57.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed     02-22-2017 16:29
City Register File No.(CRFN):
**2017000073457**

*Jannette M Lill*

**City Register Official Signature**

Prepared By and Return To:
Heather Neal
Collateral Department
Meridian Asset Services, Inc.
780 94th Avenue N., Suite 102
St. Petersburg, FL 33702
(727) 497-4650

Space above for Recorder's use

Section: N/A Lot: 28 Block: 5089
Loan No:
Sver Ln No:
GS ID:

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **NATIONSTAR MORTGAGE LLC**, whose address is **8950 CYPRESS WATERS BLVD., COPPELL, TX 75019**, (ASSIGNOR), does hereby grant, assign and transfer to **MTGLQ INVESTORS, L.P.,** whose address is **6011 CONNECTION DRIVE, 5TH FLOOR, IRVING, TX 75039**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 7/25/2006
Original Loan Amount: $570,000.00
Executed by (Borrower(s)): SHENICOLE TANNER
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book/Liber/Volume N/A, Page N/A,
Document/Instrument No: 2006000459499 in the Recording District of **KINGS NEW YORK CITY, NY**, Recorded on 8/15/2006.

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: 56 MARTENSE ST, BROOKLYN, NEW YORK 11226

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.*

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **JAN 19 2017**

NATIONSTAR MORTGAGE LLC, BY MTGLQ INVESTORS, L.P., ITS ATTORNEY-IN-FACT

By: JAMES W MOFFETT
Title: VICE PRESIDENT

Witness Name: ___Edward Chavez___

POA was recorded in New York, NY on
1/31/17 Inst# 2017000043263

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of     **TEXAS**
County of    **DALLAS**

On **JAN 1 9 2017**, before me, **E'meraude A. Rash**, a Notary Public, personally appeared **JAMES W MOFFETT, VICE PRESIDENT of/for MTGLQ INVESTORS, L.P., AS ATTORNEY-IN-FACT FOR NATIONSTAR MORTGAGE LLC**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of TEXAS that the foregoing paragraph is true and correct. I further certify JAMES W MOFFETT, signed, sealed, attested and delivered this document as a voluntary act in my presence in the County of DALLAS, State of TEXAS.

Witness my hand and official seal.

(Notary Name): **E'meraude A. Rash**
My commission expires: **NOV 1 8 2019**

> E'MERAUDE A. RASH
> Notary Public State of Texas
> My Commission # 130444921
> My Comm. Exp. November 18, 2019

## EXHIBIT "A"

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York bounded and described as follows:

BEGINNING at a point on the Southerly side of Martense Street, distant 450.31 feet Easterly from the corner from the corner formed by the intersection of the Easterly side of Flatbush Avenue with the southerly side of Martense Street;

RUNNING THENCE Southerly at right angles to Martense Street and part of the distance through a party wall, 113 feet 4 ¾ inches to the center line of the block between Martense Street and church Avenue;

THENCE Easterly along said center line of the block, 25 feet;

THENCE Northerly at right angles to Martense and part of the distance through a party wall 113 feet 7 inches to the southerly side of Martense Street;

THENCE Easterly along the Southerly side of Martense Street 25 feet to the point or place of BEGINNING.

### Assignment Chain

| | |
|---|---|
| Mortgage Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION, ITS SUCCESSORS AND ASSIGNS |
| Borrower: | SHENICOLE TANNER |
| Origination Balance: | $570,000.00 |
| Origination Date: | 07/25/2006 |
| Recording Date: | 08/15/2006 |
| Mortgage Recording Details: | Book: N/A; Page: N/A; Instrument: 2006000459499 |
| Assigned From: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST MAGNUS FINANCIAL CORPORATION, ITS SUCCESSORS AND ASSIGNS |
| To: | AURORA LOAN SERVICES, LLC |

AOM Recorded:    05/15/2009
AOM Recording    Book: N/A; Page: N/A; DocumentNo: 2009000146110
Details:

Assigned From:    AURORA LOAN SERVICES, LLC
To:    NATIONSTAR MORTGAGE, LLC
AOM Recorded:    11/20/2012
AOM Recording    Book: N/A; Page: N/A; DocumentNo: 2012000456423
Details:

EXHIBIT "B"

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

**Document ID: 2018060500487001**
**Document Type: DEED**
Document Page Count: 3

Document Date: 06-04-2018          Preparation Date: 06-06-2018

**PRESENTER:**
CARNEGIE NATIONAL ABSTRACT (COURT. REC 56 MARTENSE
274 MADISON AVENUE
SUITE 1104
NEW YORK, NY 10016
212-957-6600

**RETURN TO:**
CARNEGIE NATIONAL ABSTRACT (COURT. REC 56 MARTENSE
274 MADISON AVENUE
SUITE 1104
NEW YORK, NY 10016
212-957-6600

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5089 | 28 Entire Lot | | 56 MARTENSE STREET |

**Property Type:** DWELLING ONLY - 3 FAMILY

**CROSS REFERENCE DATA**

CRFN_____  or  DocumentID_____  or  _____ Year____ Reel___ Page_____  or  File Number_____

**PARTIES**

**GRANTOR/SELLER:**
SHENICOLE TANNER
56 MARTENSE STREET
BROOKLYN, NY 11226

**GRANTEE/BUYER:**
NORTH BROOKLYN REAL ESTATE INITIATIVE, CORP.
56 MARTENSE STREET
BROOKLYN, NY 11226

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 52.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed          06-06-2018 11:42
City Register File No.(CRFN):
                    2018000187908

*Annette M Hill*

*City Register Official Signature*



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

Document ID: 2018060500487001

Document Date: 06-04-2018

Preparation Date: 06-06-2018

Document Type: DEED

**ASSOCIATED TAX FORM ID:**

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
|---|---|
| DEP CUSTOMER REGISTRATION FORM FOR WATER AND SEWER BILLING | 1 |
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 2 |
| SMOKE DETECTOR AFFIDAVIT | 1 |

*Confirmatory*

This a ✓ ~~Confirmatory~~ deed to confirm and ratify the deed between the parties that delivered on April 30th, 2009 but was lost and/or mislaid and never recorded properly.

THIS INDENTURE, made the 4th day of June in the year 2018
BETWEEN
Shenicole Tanner: Residing at 56 Martense Street, Brooklyn, New York, 11226

party of the first part, and North Brooklyn Real Estate Initiative Corp.: 56 Martense Street, Brooklyn, New York, 11226

party of the second part,

WITNESSETH, that the party of the first part, in consideration of ten dollars and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the SEE ATTACHED SCHEDULE A DESCRIPTION

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above-described premises to the center lines thereof;

TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises;

TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

AND the party of the first part covenants as follows: that said party of the first part is seized of the said premises in fee simple, and has good right to convey the same, that the party of the second part shall quietly enjoy the said premises; that the said premises are free from encumbrances, except as aforesaid; that the party of the first part will execute or procure any further necessary assurance of the title to said premises; and that said party of the first part will forever warrant the title to said premises.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

SHENICOLE TANNER

Notary Public    Carlyle Wright

CARLYLE O. WRIGHT
Notary Public, State of New York
Reg. No. 01WR6357576
Qualified in Nassau County
Commission Expires 04/24/2021

County of Queens
State of New York
this 4th day of June, 2018

ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE

State of New York, County of Queens, ss:

On the 4th day of June in the year 2018, before me, the undersigned, personally appeared Shenicole Tanner personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

NOTARY PUBLIC CARLYLE O. WRIGHT       Carlyle
Notary Public, State of New York        Wright
Reg. No. 01WR6357576
Qualified in Nassau County
Commission Expires 04/24/2021

ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE

State of New York, County of    , ss:

On the    day of    in the year    , before me, the undersigned, personally appeared    , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

NOTARY PUBLIC

ACKNOWLEDGEMENT BY SUBSCRIBING WITNESS TAKEN IN NEW YORK STATE

State of New York, County of    , ss:

On the    day of    in the year    , before me, the undersigned, a Notary Public in and for said State, personally appeared    , the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he/she/they reside(s) in    (if the place of residence is in a city, include the street and street number if any, thereof); that he/she/they know(s)

   to be the individual described in and who executed the foregoing instrument; that said subscribing witness was present and saw said    execute the same; and that said witness at the same time subscribed his/her/their name(s) as a witness thereto.

NOTARY PUBLIC

ACKNOWLEDGEMENT TAKEN OUTSIDE NEW YORK STATE

State of    , County of    , ss:

On the    day of    in the year    , before me, the undersigned personally appeared    personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual make such appearance before the undersigned in the    (add the city or political subdivision and the state or country or other place the acknowledgement was taken).

NOTARY PUBLIC

**Warranty Deed**

SHENICOLE TANNER
TO
NORTH BROOKLYN REAL ESTATE INITIATIVE CORP.

Title No. COURTESY RECORDING

COUNTY: KINGS
TOWN/CITY:
PROPERTY ADDRESS: 56 MARTENSE STREET, BROOKLYN
SECTION:
BLOCK: 5089
LOT: 28

DISTRIBUTED BY
JUDICIAL TITLE
T: 800-281-TITLE    F: 800-FAX-9396

RETURN BY MAIL TO:

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York bounded and described as follows;

BEGINNING at a point on the Southerly side of Martense Street, distant 450.31 feet Easterly from the corner from the corner formed by the intersection of the Easterly side of Flatbush Avenue with the southerly side of Martense Street;

RUNNING THENCE Southerly at right angles to Martense Street and part of the distance through a party wall, 113 feet 4 ¾ inches to the center line of the block between Martense Street and church Avenue;

THENCE Easterly along said center line of the block, 25 feet;

THENCE Northerly at right angles to Martense and part of the distance through a party wall 113 feet 7 inches to the southerly side of Martense Street;

THENCE Easterly along the Southerly side of Martense Street 25 feet to the point or place of BEGINNING.

SAID PREMISES KNOWN AS 56 Martense Street, Brooklyn, New York

EXHIBIT "C"

FILED: KINGS COUNTY CLERK 08/17/2017 09:56 AM

NYSCEF DOC. NO. 87

INDEX NO. 511854/2014

RECEIVED NYSCEF: 08/17/2017

At of the Supreme Court of the State of New York held in and for the County of Kings, at the Courthouse, at Brooklyn, New York, on the ___26___ day of _____, 2017.

Present: Hon. Noach Dear, J.S.C.

Nationstar Mortgage LLC,

Plaintiff,

-against-

Shenigole Tanner; Mortgage Electronic Registration System, Inc. as nominee for First Magnus Financial Corporation; Capital One, National Association, successor by merger to North Fork Bank successor by merger to GreenPoint Bank f/k/a The Green Point Savings Bank; City of New York Environmental Control Board; City of New York Parking Violations Bureau; City of New York Transit Adjudication Bureau; Department of Housing Preservation & Development; David Brown; Dwight Brown; Carl Day; Clifford Hendrick; Ricardo James; Linval Thelwell; Kelech Ejioga; Duane Bell; Betram Bell; Marlin Bell,

Defendants.

**JUDGMENT OF FORECLOSURE AND SALE**

Index No. 511854/2014

Our File No.: 14-035220

**Foreclosure of:**
**56 Martense Street**
**Brooklyn, NY 11226**

**Block 5089 Lot 28**

**ON** the Summons, Verified Complaint and Notice of Pendency duly filed in this action on December 15, 2014, the Order of Reference dated August 12, 2016, and all proceedings thereon, and on reading and filing the Notice of Motion date _JANUARY 04_, 2017 and Affirmation of Alexander Phengsiaroun, Esq., counsel for plaintiff, dated _JANUARY 04_, 2017, from which it appears that each of the defendant(s) herein have been duly served with the Summons and Complaint in this action, or have voluntarily appeared by their respective attorneys, and stating that more than the legally required number of days have elapsed since said defendant(s) were so served and/or appeared; and that none of the defendant(s) has served any answer to said Complaint, nor had their time to do so been extended; and that the Complaint herein and Notice of Pendency containing all the particulars required to

14-035220                            Judgment of Foreclosure and Sale                            Page 1 of 11

FILED: KINGS COUNTY CLERK 08/17/20██ 09:56 AM
NYSCEF DOC. NO. 87

INDEX NO. 511854/2014
RECEIVED NYSCEF: 08/17/2017

be stated therein was duly filed in the Office of the Clerk of the County of Kings on December

15, 2014, and has not been amended to add new parties or to embrace real property not described

in the original complaint, unless as previously directed by the Court or herein, and a Referee

having been duly appointed to compute the amount due to the plaintiff upon the bond/note and

mortgage set forth in the Complaint and to examine and report whether the mortgaged premises

can be sold in parcels,

   **AND,** on reading and filing the Report of Jeanne M. Hammock, Esq., the Referee named

in said Order of Reference, by which Report, dated December 16, 2016, it appears that the sum

of $906,808.14 was due the plaintiff, as of August 23, 2016, and that the mortgaged premises

should be sold in one parcel,

   **NOW,** upon proof of due notice of this application upon all parties who had not waived

the same, and upon proof of service of the Order of Reference as provided therein,

   **ON MOTION** of Shapiro, DiCaro & Barak, LLC, the attorneys for plaintiff, it is

   **ORDERED,** that the motion is granted; and it is further

   **ORDERED, ADJUDGED AND DECREED** that the report of Jeanne M. Hammock,

Esq., dated December 16, 2016, be, and the same is hereby, to the extent provided herein, ratified

and confirmed; and it is further

   **ORDERED, ADJUDGED, AND DECREED** that the above-described mortgaged

premises or such part thereof as may be sufficient to discharge the mortgage debt, the expenses

of the sale and the costs of this action as provided by the Real Property Actions and Proceeding

Law be sold, in one parcel, at public auction in Room 224 of Kings County Supreme Court, 360

Adams Street, Brooklyn, New York 11201 on a Thursday afternoon at 2:30 p.m., by and under

the direction of _____Jeanne M Hammock_____ Esq., who is hereby

FILED: KINGS COUNTY CLERK 08/17/2017 09:56 AM

NYSCEF DOC. NO. 87

INDEX NO. 511854/2014

RECEIVED NYSCEF: 08/17/2017

appointed Referee for that purpose, that said Referee give public notice of the time and place of

such sale in accordance with law, practice of this Court and RPAPL §231 in _Owc Time Pregs_

_____ ; and

it is further

        **ORDERED, ADJUDGED, AND DECREED** that said Referee shall accept at such sale

the highest bid offered by a responsible bidder, who shall be identified upon the court record, and

shall require that such successful bidder immediately pay to the Referee in cash or certified or

bank check payable to such Referee, ten per cent of the sum bid and shall execute Terms of Sale

for the purchase of the premises, unless such successful bidder is the plaintiff herein, in which

case, not deposit against the purchase price shall be required; and it is further

        **ORDERED, ADJUDGED AND DECREED** that in the event that the first successful

bidder fails to immediately pay the ten per cent deposit as provided herein or fails to execute the

Terms of Sale immediately following the bidding upon the subject property, the property shall

thereafter immediately, on the same day, be reoffered at auction; and it is further

        **ORDERED, ADJUDGED AND DECREED** that the closing of title shall take place at

the office of the Referee or at such other location as the Referee shall determine within forty-five

days after such sale unless otherwise stipulated by all parties. The Referee shall transfer title

only to the successful bidder at the auction. Any delay or adjournment of the closing date

beyond forty-five days may be stipulated among the parties, with the Referee's consent, up to

ninety days from the date of sale, but any adjournment beyond ninety days may be set only with

the approval of this Court; and it is further

FILED: KINGS COUNTY CLERK 08/17/2017 09:56 AM

NYSCEF DOC. NO. 87

INDEX NO. 511854/2014

RECEIVED NYSCEF: 08/17/2017

ORDERED, ADJUDGED AND DECREED, that the Referee deposit all funds received pursuant to this Order in his/her own name as Referee in *a bank of her choosing* Bank within the City of New York; and it is further

ORDERED, ADJUDGED AND DECREED, that said Referee on receiving the proceeds of such sale shall forthwith pay therefrom:

FIRST:    That statutory fees and commissions of said Referee pursuant to CPLR §8003 (b) which shall not exceed $500.00 unless the sale price (the amount of the accepted bid) exceeds $50,000.  In the event the sale price exceeds fifty thousand dollars and additional compensation (including commissions) in excess of $500 is sought pursuant to CPLR § 8003(b) and if no surplus monies are produced by the sale the parties may present a stipulation, signed by the Referee and all parties appearing, agreeing to a stated sum, to be so-ordered by the Court. Where surplus monies will be available following distribution of sums as provided herein, or where the parties are unable to agree to the Referee's proper compensation under CPLR § 8003 (b), application shall be made to this Court on notice to all parties known to be entitled to claim against any surplus monies, including the defaulting owner of the equity of redemption.  Such application shall be promptly submitted to the Court within five days of the transfer of the deed and prior to filing the Report of Sale.  The five day period for payment of surplus money into Court as set forth in RPAPL §1354(4), and the thirty day period set forth in RPAPL §1355 for the filing of the Report of Sale shall be deemed extended pending the decision of the Court regarding such application.

In the event a scheduled sale is cancelled or postponed, pursuant to CPLR § 8003(a), plaintiff shall compensate the Referee in the sum of $250.00 for each adjournment or cancellation unless the Referee has requested the delay.  Such compensation may be recouped

FILED: KINGS COUNTY CLERK 08/17/2017 09:56 AM

NYSCEF DOC. NO. 87

INDEX NO. 511854/2014

RECEIVED NYSCEF: 08/17/2017

from the proceeds of sale as a cost to plaintiff. This Order shall constitute the necessary prior authorization for compensation as set forth herein.

No compensation in excess of $750, including compensation authorized pursuant to CPLR §8003(a) for computation of the sum due to plaintiff, may be accepted by the Referee without Court approval and compliance with the filing provision of § 36.4 of the Rules of the Chief Judge.

**SECOND:**    The expenses of sale, including the cost of advertising as shown on the bills presented and certified by said Referee to be correct, copies of which shall be annexed to the Report of Sale and the NYC Transfer Tax, pursuant to 19 RCNY 23-03(d)(2), if applicable, payable within 30 days of delivery of the deed pursuant to 19 RCNY 23-08(a). The Referee shall not be held responsible for the payment of penalties or fees pursuant to this appointment. Purchaser and any title company hired by the purchaser shall be responsible for any penalties or fees incurred as a result of the late payment of the tax as required pursuant to City Administrative Code 19 RCNY 23-08(a) which requires payment within 30 days. The purchaser shall hold the Referee harmless from any such penalties accessed as a result of late payment of these taxes.

**THIRD:**    Pursuant to Real Property Actions and Proceedings Law § 1354, in accordance with their priority according to law, taxes, assessments, sewer rents, water rates and any charges placed upon the property by a city agency which have priority over the foreclosed mortgage, which are liens on the premises at the time of sale with such interest or penalties which may have lawfully accrued thereon the date of payment.

**FOURTH:**    Said Referee shall then pay to the plaintiff or its attorney, the sum of $ 1665.00 _____ for costs and disbursements in this action to be taxed by the County

FILED: KINGS COUNTY CLERK 08/17/2017 09:56 AM

NYSCEF DOC. NO. 87

INDEX NO. 511854/2014

RECEIVED NYSCEF: 08/17/2017

Clerk and inserted therein, with interest from the date hereof, [together with an additional

allowance of $ ⌀_____ hereby awarded to the plaintiff in addition to costs

with interest thereon from the date hereof,] and also the sum of $906,808.14 the said amount so

reported due as aforesaid, together with interest thereon pursuant to the terms of the Note from

August 23, 2016, the date interest was calculated to in said Report, to the date of entry of this

Order, and thereafter at the statutory post-judgment rate to the date of transfer of title, or so much

thereof as the purchase money of the mortgage premises will pay of the same, together with

$ ⌀_____ hereby awarded to the plaintiff as reasonable legal fees, together with

any advances as provided for in the note and mortgage which plaintiff has made for taxes,

insurance, principal and interest and any other charges due to prior mortgages or to maintain the

premises pending consummation of this foreclosure sale, not previously included in the

computation, upon presentation to the Referee of receipts for said expenditures, all together with

interest thereon pursuant to the note and mortgage as above provided.  Copies of such receipts

shall be annexed to the Referee's Report of Sale.  Plaintiff shall timely move to confirm the

Referee's Report of Sale pursuant to RPAPL § 1355; and it is further

**ORDERED, ADJUDGED AND DECREED** that in case the plaintiff be the purchaser

of said mortgaged premises at said sale, said Referee shall not require the plaintiff to pay in cash

the entire amount bid at said sale, but shall execute and deliver only to the plaintiff a deed or

deeds of the premises sold upon the payment to said Referee of the sum awarded to him or her

under the above provision marked **"FIRST"**, **"SECOND"**, and **"THIRD"**, if such expenses

were paid by the Referee, or in lieu of the payment of said last mentioned amounts, upon filing

with said Referee receipts of the proper municipal authorities showing payment thereof.  The

balance of the amount bid, after deducting therefrom the aforesaid amounts paid to the Referee

FILED: KINGS COUNTY CLERK 08/17/2017 09:56 AM

NYSCEF DOC. NO. 87

INDEX NO. 511854/2014

RECEIVED NYSCEF: 08/17/2017

for compensation and expenses, taxes, assessments, sewer rents and water rates, and priority liens of a city agency, shall be allowed to the plaintiff and applied by said Referee upon the amounts due to the plaintiff as specified in item marked **"FOURTH"**.  If upon so applying the balance of the amount bid, there shall be a surplus over and above the said amounts due to the plaintiff, the plaintiff shall pay to the said Referee, upon delivery to plaintiff of said Referee's deed, the amount of such surplus [which all be applied by the Referee upon motion made pursuant to RPAPL § 1351(3) and proof satisfactory to the Referee of the sums due thereon, to any subordinate mortgage duly recorded against the property, pursuant to RPAPL §1354(3), which payments shall be reported in the Referee's Report of Sale.]  Any surplus remaining after all payments as herein provided shall be deposited into Court in accordance with RPAPL §1354(4) and the Referee shall immediately give notice of such surplus to the owner of the mortgaged premises as identified by plaintiff at the time of the sale; and it is further

**ORDERED, ADJUDGED AND DECREED**, that said Referee take the receipt of the plaintiff or plaintiff's attorney for the amounts paid as hereinbefore directed in item marked "FOURTH", and file it with his/her Report of Sale, that he/she deposit the surplus monies, if any, with the Kings County Clerk within five days after the same shall be received unless such period be deemed extended by the filing of an application for additional compensation as set forth herein, to the credit of this action, to be withdrawn only upon order of the Court, signed by a Justice of the Court; that said Referee make his/her Report of such Sale under oath showing the disposition of the proceeds of the sale, accompanied by the vouchers of the persons to whom payment was made, and file it with the Kings County Clerk, with a copy of the Chambers of the Appointing Justice, within thirty days after completing the sale and executing the proper conveyance to the purchaser or within

FILED: KINGS COUNTY CLERK 08/17/2017 09:56 AM

NYSCEF DOC. NO. 87

INDEX NO. 511854/2014

RECEIVED NYSCEF: 08/17/2017

thirty days of the decision of the court with respect to any application for additional compensation; and it is further

   ORDERED, ADJUDGED AND DECREED, that if the proceeds of such sale be insufficient to pay the amount reported due to the plaintiff with interest and costs as aforesaid, the plaintiff may recover of the defendant(s), Shenicole Tanner, the whole deficiency or so much thereof as the Court may determine to be just and equitable of the residue of the mortgage debt remaining unsatisfied after the sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made as prescribed by § 1371 of the Real Property Actions and Proceedings Law within 90 days of the delivery of the deed by the Referee, and the amount thereof is determined and awarded by an order of this Court as provided for in said action; and it is further

   ORDERED, ADJUDGED AND DECREED, that the purchaser or purchaser at such sale be let into possession on production of the Referee's deed or deeds; and it is further

   ORDERED, ADJUDGED AND DECREED that each and all of the defendant(s) in this action, and all persons claiming under any of them after the filing of such Notice of Pendency of this action, be and they are hereby forever barred and foreclosed of all right, claim, lien, title, interest, and equity of redemption in the said mortgaged premises and each and every part thereof; and it is further

   ORDERED, ADJUDGED AND DECREED, that said premises is to be sold in one parcel in "as is" physical order and condition, subject to any state of facts that an inspection of the premises would disclose; any state of facts than an accurate survey of the premises would show; any covenants, restrictions, declarations, reservations, easements, rights of way and public utility agreement of record, any building and zoning ordinances of the municipality in which the

14-035220

Judgment of Foreclosure and Sale

FILED: KINGS COUNTY CLERK 08/17/2017 09:56 AM

NYSCEF DOC. NO. 87

INDEX NO. 511854/2014

RECEIVED NYSCEF: 08/17/2017

mortgaged premises is located and possible violations of same; any rights of tenants or persons in possession of the subject premises; prior liens of record, if any, except those liens addressed in §1354 of the Real Property Actions and Proceeding Law, and any equity of redemption of the UNITED STATES OF AMERICA to redeem the premises within 120 days from date of sale. Risk of loss shall not pass to purchaser until closing of title; and it is further

ORDERED, that in the Absence of the Referee, the Court may designate a Substitute Referee forthwith; and it is further

ORDERED that the Referee appointed herein is subject to the requirements of 36.2(c) of the Chief Judge, and if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall notify the Appointing Judge forthwith; and it is further

ORDERED, that a copy of this Judgment with Notice of Entry shall be served upon the designated Referee, the owner of the equity of redemption, as of the date of this Order, any tenants named in this action and any other party entitled to notice within twenty days of entry and no less than thirty days prior to sale; and it is further

ORDERED, that the Plaintiff shall serve a copy of the Notice of Sale upon the Owner of Equity of Redemption at both his/her last known address and the property address (affidavit of such service shall be presented to the Foreclosure Clerk on or before the action sale) and upon the Foreclosure Department at least ten (10) days prior to the scheduled sale.

ENTER:

Hon. Noach Dear, J.S.C.

Clerk

NANCY T. SUNSHINE
Clerk

KINGS COUNTY CLERK
FILED
2011 AUG 17  AM 8: 37

Attorney certification pursuant
to 22NYCRR §130-1.1-a
is affixed to inside cover.

14-035220

FILED: KINGS COUNTY CLERK 08/17/2017 09:56 AM
NYSCEF DOC. NO. 87

INDEX NO. 511854/2014
RECEIVED NYSCEF: 08/17/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

Nationstar Mortgage LLC,

                                    Plaintiff,

        -against-

Shenicole Tanner, et al,

                                    Defendants.

**COSTS OF PLAINTIFF**
Index No.511854/2014

**COSTS OF PLAINTIFF:**

Costs before note of issue
        CPLR Sec. 8201 subd.1                                              $200.00
Allowance by statute
        CPLR Sec. 8302 (a) (b)                                              150.00
Additional allowance
        CPLR Sec. 8302 (d)                                                    50.00
Motion costs
        CPLR Sec 8302                                                          0.00

                                                Costs:          $400.00

**DISBURSEMENTS:**
Fee for index number
        CPLR Sec. 8018 (a)                                                 $400.00
Referee's fee
        CPLR Sec. 8301(a)1                                                   250.00
Clerk's fee, filing notice of pend. or attach.
        CPLR Sec. 8021 (a)(10)                                               35.00
Paid for searches
        CPLR Sec. 8301(a)1                                          250.00  300.00
Serving copy summons & complaint
        CPLR Sec. 8011(c)1                                        1,843.90  280.00
Request for Judicial Intervention
        CPLR Sec. 8020(a)                                                    95.00
Fees for Submission of Order of Reference and Judgment
        CPLR Sec. 8020(a)                                                    90.00
Fees for publication
        CPLR sec. 8301(a)3                                           0.00    15.00
Disbursements:
Total Costs and Disbursements:

Costs at $ 1665.00
This 17 day of AUG. 2017

Clerk of Court  Kings County

NANCY T. SUNSHINE
Clerk

Alexander Phengsiaroun, Esq.
Associate Attorney
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380

2017 AUG 17  AM 8:34    KINGS COUNTY CLERK FILED

14-035220                        Judgment of Foreclosure and Sale                    Page 10 of 11

FILED: KINGS COUNTY CLERK 08/17/2017 09:56 AM

NYSCEF DOC. NO. 87

INDEX NO. 511854/2014

RECEIVED NYSCEF: 08/17/2017

## ATTORNEY'S AFFIRMATION

I, Alexander Phengsiaroun, an attorney admitted to the practice of law in the State of New York, hereby affirm pursuant to CPLR §2106 that: Shapiro, DiCaro & Barak, LLC, are the attorneys of record for the Plaintiff in this action; the foregoing disbursements have been or will be necessarily made or incurred in this action and are reasonable in amount; and the copies of the documents or papers as charged herein were actually and necessarily obtained for use.

Dated:    01\04\17

Alexander Phengsiaroun, Esq.
Associate Attorney
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380

14-035220                    Judgment of Foreclosure and Sale                    Page 11 of 11

# NOTICE OF SALE

SUPREME COURT COUNTY OF <u>KINGS</u>

Nationstar Mortgage LLC, Plaintiff

AGAINST

Shenicole Tanner; et al., Defendant(s)

Pursuant to a Judgment of Foreclosure and Sale duly dated July 26, 2017 I, the undersigned Referee will sell at public auction at the Kings County Supreme Court, 360 Adams Street, Room 224, Brooklyn, NY 11201 on June 7 2018 at 2:30PM, premises known as 56 Martense Street, Brooklyn, NY 11226. All that certain plot piece or parcel of land, with the buildings and improvements erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of NY, Block 5089 Lot 28. Approximate amount of judgment $906,808.14 plus interest and costs. Premises will be sold subject to provisions of filed Judgment Index# 511854/2014.

Jeanne M. Hammock, Esq., Referee

Shapiro, DiCaro & Barak, LLC
Attorney(s) for the Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(877) 759-1835

Dated: April 16, 2018

EXHIBIT "D"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION
IN RE

NORTH BROOKLYN REAL ESTATE
INITIATIVE, CORP.,

CHAPTER 11

CASE NO. 1-18-43325-ess

DEBTOR.

JUDGE: Elizabeth S. Stong

RELIEF FROM STAY – REAL ESTATE AND
COOPERATIVE APARTMENTS

BACKGROUND INFORMATION

1. ADDRESS OF REAL PROPERTY OR COOPERATIVE APARTMENT: 56 Martense Street, Brooklyn, NY 11226

2. LENDER NAME: MTGLQ Investors, L.P.

3. MORTGAGE DATE: 07/25/2006

4. POST-PETITION PAYMENT ADDRESS:
Selene Finance, LP, 9990 Richmond Avenue, Suite 400S, Houston, TX 77042

DEBT AND VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF AUGUST 2, 2018: $1,006,023.59
(THIS MAY NOT BE RELIED UPON AS A "PAYOFF" QUOTATION.)

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT AS OF THE MOTION FILING DATE: $1,300,000.00

7. SOURCE OF ESTIMATED MARKET VALUE: Debtor's Schedule D

14-035220

## STATUS OF THE DEBT AS OF 08/15/2018

8. DEBTOR(S)'S INDEBTEDNESS TO MOVANT AS OF THE PAYOFF DATE:

   A. TOTAL:                                                          $    1,006,023.59

   B. PRINCIPAL:                                                      $      561,810.56

   C. INTEREST:                                                       $      270,610.26

   D. ESCROW (TAXES AND INSURANCE):                                   $      131,973.28

   E. FORCED PLACED INSURANCE EXPENDED BY MOVANT:          $          0.00

   F. PRE-PETITION ATTORNEYS' FEES CHARGED TO DEBTOR(S):   $      4,685.00

   G. PRE-PETITION LATE FEES CHARGED TO DEBTOR(S):         $        720.49

9. CONTRACT INTEREST RATE: 8.500%
*(IF THE INTEREST RATE HAS CHANGED, LIST THE RATE(S) AND DATE(S) THAT EACH RATE WAS IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: _____.)*

10. OTHER PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE: Property Inspections: $1,387.50; Referee Fee: $250.00; Publication Costs: $7,207.90; Tax Search: $54.00; Code Violation Fee: $80.00; Court Costs: $500.00; Title Costs: $706.00; Recording Cost: $82.00; Posting Costs: $1,373.40; Escrow to Corporate: $24,583.20
*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: _____.)*

## AMOUNT OF POST-PETITION DEFAULT AS OF THE MOTION FILING DATE

11. DATE OF RECEIPT OF LAST PAYMENT: No post-petition payments received.

12. NUMBER OF PAYMENTS DUE FROM PETITION DATE TO MOTION FILING DATE: 2 post-petition payments; however loan contractually due for 7/1/2008; 122 payments.

13. PAYMENTS IN DEFAULT:

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
| 7/1/18-8/1/18 | $4,049.03 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| TOTALS | $ 8,098.06 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

14-035220

14. OTHER POST-PETITION FEES CHARGED TO DEBTOR(S):

| | | |
|---|---|---|
| A. TOTAL: | $ | 13.50 |
| B. ATTORNEY'S FEES IN CONNECTION WITH THIS MOTION: | $ | 0.00 |
| C. FILING FEE IN CONNECTION WITH THIS MOTION: | $ | 0.00 |
| D. OTHER POST-PETITION ATTORNEYS' FEES: | $ | 0.00 |
| E. POST-PETITION INSPECTION FEES: | $ | 13.50 |
| F. POST-PETITION APPRAISAL/BROKER'S PRICE OPINION FEES: | $ | 0.00 |
| G. FORCED PLACED INSURANCE EXPENDED BY MOVANT: | $ | 0.00 |

15. AMOUNT HELD IN SUSPENSE BY MOVANT:     $ _____ 0.00

16. OTHER POST-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE: N/A
*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM; STATE THE EXHIBIT NUMBER HERE: _____.)*

## REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH EACH DOCUMENT.

(1)   COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE SUBJECT PROPERTY. FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY. (EXHIBIT A.)

(2)   COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION. (EXHIBIT A.)

(3)   COPIES OF DOCUMENTS ESTABLISHING THAT MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED. FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED. (EXHIBIT A.)

14-035220

**DECLARATION AS TO BUSINESS RECORDS**

I, ____Leslie Leanhart____, THE ____Bankruptcy Manager____ OF Selene Finance LP as servicer for MTGLQ Investors, L.P. , THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THIS FORM AND ANY EXHIBITS ATTACHED HERETO (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS; THAT THE RECORDS WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND THAT THE RECORDS WERE MADE IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER DECLARE THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE, ARE TRUE AND CORRECT COPIES OF THE ORIGINAL DOCUMENTS.

EXECUTED AT ____Jacksonville____
ON THIS 5th DAY OF September, 2018

NAME: Leslie Leanhart
TITLE: Bankruptcy Manager
MOVANT: Selene Finance LP as servicer for MTGLQ Investors, L.P.
STREET ADDRESS: 9990 Richmond Avenue, Suite 400S
CITY, STATE AND ZIP CODE: Houston, Texas 77042

**DECLARATION**

I, ____Leslie Leanhart____, THE ____Bankruptcy Manager____ OF Selene Finance LP as servicer for MTGLQ Investors, L.P., THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT ____Jacksonville____
ON THIS 5th DAY OF September, 2018

NAME: Leslie Leanhart
TITLE: Bankruptcy Manager
MOVANT: Selene Finance LP as servicer for MTGLQ Investors, L.P.
STREET ADDRESS: 9990 Richmond Avenue, Suite 400S
CITY, STATE AND ZIP CODE: Houston, Texas 77042

14-035220

EXHIBIT "E"

**Fill in this information to identify the case:**

Debtor name _North Brooklyn, RE Jonthno fire_

United States Bankruptcy Court for the: _Eastern District_ District of _NY_
(State)

Case number (If known): _1.18.43325.ess_

☐ Check if this is an
amended filing

## Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible.

1. **Do any creditors have claims secured by debtor's property?**
   ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.
   ☑ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

2. List in alphabetical order all creditors who have secured claims. If a creditor has more than one
   secured claim, list the creditor separately for each claim.

| | | Column A<br>Amount of claim<br>Do not deduct the value<br>of collateral. | Column B<br>Value of collateral<br>that supports this<br>claim |
|---|---|---|---|

**2.1** Creditor's name
_Seceure Finance_

Creditor's mailing address
_P.O. Box 422039_
_Houston, TX 77242_

Creditor's email address, if known

Date debt was incurred _2010_

Last 4 digits of account
number ____

Do multiple creditors have an interest in the
same property?
☑ No
☐ Yes. Specify each creditor, including this creditor,
and its relative priority.

Describe debtor's property that is subject to a lien
_56 Monroe St_
_Brooklyn, NY 11238_

Describe the lien _1st Mortgage_

Is the creditor an insider or related party?
☑ No
☐ Yes

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

$ 950,000.00    $ 1,300,000.00

**2.2** Creditor's name
_H.P.D_

Creditor's mailing address
_100 Gold St_
_NY, NY 10038_

Creditor's email address, if known

Date debt was incurred _2014 - 2018_

Last 4 digits of account
number _5089 10/28_

Do multiple creditors have an interest in the
same property?
☑ No
☐ Yes. Have you already specified the relative
priority?
   ☐ No. Specify each creditor, including this
   creditor, and its relative priority.

   ☐ Yes. The relative priority of creditors is
   specified on lines ____

Describe debtor's property that is subject to a lien
_56 Monroe_
_Brooklyn NY 11238_

Describe the lien _Utilities (light & gas)_

Is the creditor an insider or related party?
☑ No
☐ Yes

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

$ 27,770.96    $ 1,300,000.00

3. **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional
   Page, if any.**                                                    $ 1,006,690.70

Debtor  *North Brooklyn RE Initiative Corp*   Case number (if known)  *1-18-43325-ess*

| Part 1: | Additional Page |
|---|---|

Column A: Amount of claim. Do not deduct the value of collateral.

Column B: Value of collateral that supports this claim.

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.

**2.3 Creditor's name**
*H.P.D.*

Describe debtor's property that is subject to a lien
*56 Market St Brooklyn NY 11238*   $ *9150.⁵⁰*   $ ___

**Creditor's mailing address**
*100 Gold St, N.Y., N.Y. 10038*

Describe the lien *water penalty*

Is the creditor an insider or related party?
☐ No
☐ Yes

**Creditor's email address, if known**
___

Is anyone else liable on this claim?
☐ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

**Date debt was incurred** ___
**Last 4 digits of account number** *Block 5089 Lot: 28*

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Do multiple creditors have an interest in the same property?
☐ No
☑ Yes. Have you already specified the relative priority?
  ☑ No. Specify each creditor, including this creditor, and its relative priority.
  ___
  ☐ Yes. The relative priority of creditors is specified on lines ___

**2.4 Creditor's name**
*NYC Dept of Buildings*

Describe debtor's property that is subject to a lien
*56 Market Brooklyn NY 11238*   $ *18,030.⁵⁰*   $ ___

**Creditor's mailing address**
*280 Broadway 5th fl NY New York 10007*

Describe the lien *D.O.B violations*

Is the creditor an insider or related party?
☑ No
☐ Yes

**Creditor's email address, if known**
___

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

**Date debt was incurred** *20 Nov 18*
**Last 4 digits of account number** *Block 5089 Lot: 28*

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

Do multiple creditors have an interest in the same property?
☐ No
☑ Yes. Have you already specified the relative priority?
  ☑ No. Specify each creditor, including this creditor, and its relative priority.
  ___
  ☐ Yes. The relative priority of creditors is specified on lines ___

Official Form 206D   Additional Page of Schedule D: Creditors Who Have Claims Secured by Property   page ___ of ___

Debtor _North Brooklyn RE. Initiative, Corp_   Case number (if known) _1.18.43325.ess_
Name

**Part 2:** List Others to Be Notified for a Debt Already Listed in Part 1

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| Dept of Enviormentl Protection 59-17 Junction Blvd 13th Fl Flushing, NY 11373 | Line 2. _5_ | _1 0 0 1_ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |

Form 206D          Official Part 2 of Schedule D: Creditors Who Have Claims Secured by Property          page ___ of ___

**SHAPIRO, DICARO & BARAK, LLC**
Attorneys for Selene Finance LP as servicer for MTGLQ
Investors, L.P.
One Huntington Quadrangle, Suite 3N05
Melville, NY 11747
Telephone: (631) 844-9611, Fax: (631) 844-9525
**Shari S. Barak**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

| | |
|---|---|
| IN RE | CHAPTER 11 |
| NORTH BROOKLYN REAL ESTATE INITIATIVE, CORP., | CASE NO. 1-18-43325-ess |
| | JUDGE: Elizabeth S. Stong |
| DEBTOR. | |

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK )
)ss:
COUNTY OF SUFFOLK )

I, Karina Waage, being sworn, say, I am not a party to this action; I am over 18 years of

age, I reside in Suffolk County, New York.

On September 5, 2018 I served the within Notice of Motion, Affirmation in Support,

Exhibits and Proposed Order Granting Relief from the Automatic Stay upon:

TO:    Debtor
North Brooklyn Real Estate Initiative, Corp.
56 Martense Street
Brooklyn, NY 11226

Borrower
Shenicole Tanner
56 Martense Street
Brooklyn, NY 11226

Attorney for Debtor
Chuka Steve Okenwa
100 Church Street
Suite 800

14-035220

New York, NY 10007

U.S. Trustee
Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

NYC Department of Buildings
Administrative Endorsement Unit
280 Broadway 5th Floor
New York, NY 10007-1944

Department of Environmental Protection
59-17 Junction Boulevard
Flushing, NY 11373-5188

Nationstar Mortgage LLC
350 Highland Drive
Lewisville, TX 75067

NYC Water Board
c/o Andrew Rettig
59-17 Junction Boulevard
Flushing, NY 11373-5188

Steve Okenwa, P.C.
613 East 89th Street
Brooklyn, NY 11236-3439

Housing Preservation and Development
100 Gold Street
New York, NY 10038-1619

New York City Dept. of Finance
Office of Legal Affairs
345 Adams Street, 3rd Floor
Brooklyn, NY 11201-3719

at the addresses designated by the foregoing individuals for that purpose by depositing a true

copy of same enclosed in a postpaid, properly addressed wrapper, in an official depository under

14-035220

the exclusive care and custody of the United States Postal Service within the State of New York.

Date September 5, 2018

Karina Waage
Bankruptcy Paralegal
Shapiro, DiCaro & Barak, LLC
Attorneys for Selene Finance LP as servicer
for MTGLQ Investors, L.P.
One Huntington Quadrangle, Suite 3N05
Melville, NY  11747
Telephone: (631) 844-9611
Fax: (631) 844-9525

Sworn to before me this
5th day of September, 2018

Notary Public

DEBORAH CALLAHAN
Notary Public, State of New York
Registration No. 01-CA6278202
Qualified in Suffolk County
Commission Expires_____3/18____20_21

14-035220

Law Offices of

# Shapiro, DiCaro & Barak, LLC

One Huntington Quadrangle
Suite 3N05
Melville, New York 11747
(631) 844-9611
FAX (631) 844-9525

September 5, 2018

Chambers Hon. Elizabeth S. Stong
United States Bankruptcy Court
271 Cadman Plaza East
Brooklyn, NY 11201

RE:    North Brooklyn Real Estate Initiative, Corp
       Chapter 11
       Case Number: 1-18-43325-ESS
       SD&B File Number: 14-035220

Dear Judge Stong;

Enclosed please find one Chambers' copy of the Notice of Motion and Motion for Relief from the Automatic Stay in the above bankruptcy case. This motion is scheduled to be heard on October 23, 2018 at 10:30 a.m.

Very truly yours,

/s/Shari Barak

_____

Shari S. Barak

Enclosures

ATTORNEYS AT LAW

Shari S. Barak, Member/Managing Attorney    (631) 844-9611    sbarak@logs.com

ROCHESTER OFFICE    175 Mile Crossing Boulevard    Rochester, NY 14624    PHONE (585) 247-9000    FAX (585) 247-7380